**William R. JAMES et al., Plaintiffs,**

**v.**

**James T. LYNN et al., Defendants.**

**Civ. A. 74–M–309.**

United States District Court,
D. Colorado.

May 7, 1974.

William R. James, of Decker & Miller, P.C., Denver, Colo., for plaintiffs.

James L. Treece, U. S. Atty., and William K. Hickey, Asst. U. S. Atty., Denver, Colo., for federal defendants.

Paul C. Benedetti and Lynn W. Lehmann, Denver, Colo., for local defendants.

James C. Bull, of Quiat, Bucholtz & Bull, P.C., Denver, Colo., amicus curiae.

## MEMORANDUM AND ORDER FOR DISMISSAL

MATSCH, District Judge.

The plaintiffs are landowner residents within an area of the City and County of Denver, Colorado which is the subject of a Neighborhood Development Program commonly called the East Side Urban Renewal Project. The program design contemplates the demolition of all structures within the area and the construction of assisted low and moderate income housing together with market rate rental housing. The project is to be performed in phases. Only the first phase has been funded and none of the plaintiffs' homes is in the first phase.

### THE COMPLAINT

By their complaint and motion for preliminary injunction the plaintiffs ask this Court to declare that any work on this project is unlawful because of an alleged failure of the Department of Housing & Urban Development ("HUD") to file an adequate environmental impact statement as required by 42 U.S.C. § 4332(2)(C). The plaintiffs also alleged that HUD officials failed to comply with Executive Order 11593 in that they have not instituted procedures, in consultation with the Advisory Council on Historic Preservation, to assure that the plan for this project will contribute to the preservation of structures of architectural and historical signifi-

cance. In their third claim for relief it was contended that the defendant Denver Urban Renewal Authority had failed to abide by regulations governing it and requiring citizen participation in the planning, execution and development of the subject program. That claim was withdrawn in the course of the hearings held in this proceeding.

The relief requested is the entry of orders enjoining the defendants from proceeding with the project until HUD has filed an adequate environmental impact statement and has otherwise complied with the National Environmental Policy Act.

### THE HEARINGS

By agreement of counsel, the hearing on the motion for preliminary injunction was a hearing on the merits with all parties submitting their evidence.

The evidence showed that the genesis of this project was in 1971 in the planning for the 1976 Winter Olympic Games then scheduled to be held in Denver, Colorado. Officals of the City and County of Denver, the Denver Urban Renewal Authority and the Department of Housing & Urban Development concluded that the need for housing members of the press during the games would provide a good opportunity to obtain federal funds to finance additional low income housing in Denver. The area to be used for this purpose was generally regarded as a blighted residential neighborhood with substandard structures, many of which were in violation of the applicable housing and building codes.

HUD officials made an environmental impact study resulting in a draft environmental impact statement dated September 21, 1972. That statement was consistent with the proposal that the area be cleared completely with all new development to be constructed. In the general election in November, 1972, the voters disapproved the plan for the Winter Olympics, thereby eliminating the need for press housing. Subsequently

the City Council of the City and County of Denver determined to go forward with an application for funds to provide this low income housing through urban renewal. The final environmental impact statement was then prepared under date of January 12, 1973. Thereafter the necessary actions were completed to appropriate funds and the contracts were signed.

The cost of the first phase of this project exceeds $7,000,000 and the Federal funding is by annual increments which expire at the close of the Federal fiscal year. At the time of the hearing approximately $700,000. had been spent and demolition was beginning. It was estimated that the work program for the immediate future would average $50,000. daily.

The evidence included detailed explanations of the manner in which the environmental impact statement was prepared. It is not necessary to review that testimony because the disposition of this case does not depend upon it.

Those who prepared the impact statement did not comply with the requirements of Executive Order No. 11593, May 13, 1971, 36 F.R. 8921. There was no effort to work with the Colorado Historical Society to determine whether any structures of historical or architectural significance were located within the project area. There was no consultation with the Advisory Council on Historic Preservation. No one from HUD made any inventory of the project area structures to determine whether any of them should be nominated for listing on the National Register of Historic Places and there was no communication with a Department of Interior consultant to obtain advice about the procedure to be followed under that executive order although such a consultant was available in Denver.

Several witnesses with adequate backgrounds in history and architecture identified certain buildings in the impact area as possibilities for nomination for listing on the National Register. These buildings were described as being of architectural significance because they exemplified modest residential housing construction of the Victorian period in Denver's history. Specific descriptions of those properties were given and pictures of them were introduced into evidence.

None of the buildings scheduled for immediate demolition was listed on the National Register and none was within the protection of a procedure established by a local landmark preservation ordinance.

## CONCLUSIONS

▮ With one exception, the attack upon the adequacy of HUD's environmental impact statement is more a matter of style than of substance. While there are a number of very generalized conclusions given, the statement appears to contain enough material on each of the five matters required to be considered by 42 U.S.C. § 4332(2)(C) and there is a reasonable discussion of the subject matter in each of the five required areas.

The standard for judicial review of a NEPA statement was set by National Helium Corporation v. Morton, 486 F.2d 995 (10th Cir. 1973). On pages 1002 and 1003 of that opinion the Court said:

"In summary, then, our view is that the review of FES is limited to the following:

(1) Whether FES discusses all of the five procedural requirements of NEPA.

(2) Whether the environmental impact statement constitutes an objective good faith compliance with the demands of NEPA.

(3) Whether the statement contains a reasonable discussion of the subject matter involved in the five required areas."

The exception is the failure of the HUD officials to consider the possibility

that the area includes structures of historical or architectural significance. There is no doubt that the requirements of Executive Order No. 11593 were not met. For the purpose of this case and without deciding the question, it is assumed that the provisions of this order establish a procedure which must be followed in the preparation of a NEPA statement.

Upon that assumed deficiency, if this Court should now enjoin the defendants from proceeding with the project until the necessary corrective action is taken, what can be expected to occur?

HUD officials will proceed to take an inventory of structures, they will consult and confer with the State Historical Society officials and the Department of Interior consultant and they will then make the decisions required. If they decide that no nominations should be made and that no protection should be given, the impact statement would be supplemented to discuss the matter and to state the conclusion and the area would again be scheduled for clearance. It may be that HUD officials would decide that there are structures which should be considered for nominations, such nominations would be made, consultation would take place, the property might be listed and then because of the economics of the matter and if no purchaser could be obtained to buy and rehabilitate these properties, HUD might still conclude that they should be cleared.

In those circumstances the agency decision would be made with an awareness of what was involved. The standard for judicial review of the agency action on that basis is that found in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). There can be no interference with such a decision unless it is arbitrary, capricious and an abuse of discretion. It is not possible to see how such a later determination to clear this area could be so characterized.

What has happened in this case is that the plaintiffs have done the work required of HUD. Officials of that agency were present throughout the hearings and they have been exposed to all of the evidence presented. That evidence in itself has supplied the omitted material. Accordingly, a court order to supplement the impact statement could be satisfied by the simple act of adding a transcript of this testimony. Such a procedure would be foolish and futile.

■ The purpose of the impact statement is to insure that those who act for an agency have sufficient information available to them before making their decisions. National Helium Corporation v. Morton, 455 F.2d 650, 656 (10th Cir. 1971); Ely v. Velde, 451 F.2d 1130, 1138 (4th Cir. 1971).

While it is now very late and while it would have been better had this information been gathered and considered at the time of the preparation of the HUD statement, the buildings have not yet been destroyed and the appropriate officials are now aware and can still change the plan to do so. Accordingly, this hearing itself is the only relief required in this case and no injunction should enter.

The plaintiffs claim for the allowance of attorney's fees is rejected.

Upon the foregoing it is

Ordered, that the motion for preliminary injunction is denied and the complaint and cause of action are dismissed with prejudice, each party to bear his own costs.